NOT FOR PUBLICATION                                    (Docket No. 12)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                            :
EDWIN SCHLEY,               :
                            :
           Plaintiff,       :    Civil No. 05-3270 (RBK)
      v.                    :    OPINION
                            :
GLOUCESTER REFRIGERATED     :
WAREHOUSE, INC., et al.     :
                            :
           Defendants.      :
_____ :
```

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by Defendants Gloucester Refrigerated Warehouse, Inc., Gloucester Terminals, LLC, and Timothy McNellis (collectively "Defendants") for summary judgment against Plaintiff Edwin Schley ("Plaintiff"). For the reasons set forth below, the Court denies Defendants' motion for summary judgment.

**I.   Background**

Plaintiff became an employee of Gloucester Refrigerated Warehouse, Inc. ("Gloucester") in May 1998. A collective bargaining agreement between Gloucester and Teamsters Local Union No. 929 governed Plaintiff's employment with Gloucester. On or about October 4, 2004, Gloucester furloughed Plaintiff due to a seasonal slow down in the workload at Plaintiff's job site.

Plaintiff saw his physician on October 11, 2004 for

treatment related to carpal tunnel syndrome and hypertension. At that appointment, Plaintiff scheduled another appointment for blood work for the following day, October 12, 2004.

On October 7, 2004, Gloucester mailed a letter to Plaintiff, recalling him to work on October 12, 2004 at 8:00 A.M. This letter informed Plaintiff that failure to report to work on the date and time provided would result in Plaintiff's loss of re-employment rights. Plaintiff alleges that he did not receive this letter until October 13, 2004, but that he learned "sometime after" 8:00 A.M. on October 12, 2004 that Gloucester recalled employees to work. Accordingly, Plaintiff alleges that he called Gloucester and advised them that he did not receive the recall letter, and that even if he received it, his doctor's appointment prevented him from reporting to work at the designated date and time. Plaintiff alleges that he subsequently produced a doctor's note.[1]

Gloucester interpreted Plaintiff's failure to report on October 12, 2004 as a voluntary resignation, pursuant to the collective bargaining agreement that governed Plaintiff's employment. On October 12, 2004, Defendant Tim McNellis sent Plaintiff certified mail informing Plaintiff that Gloucester

---

[1] Defendants allege that Plaintiff never told them he was unavailable to appear when recalled due to a doctor's appointment. Moreover, Defendants dispute that Plaintiff ever provided them with a doctor's note. (Adreano Aff. ¶ 11.)

interpreted Plaintiff's failure to appear when recalled as a voluntary resignation, which Gloucester accepted, and therefore Plaintiff forfeited all seniority rights.

On October 13, 2004, the Union submitted a grievance on Plaintiff's behalf. Gloucester denied the written grievance, and on October 14, the Union and Gloucester conducted a hearing. Gloucester alleges that no one mentioned Plaintiff's doctor's appointment during this hearing. Gloucester refused to change its position, and the Union and Gloucester agreed to submit the matter to a Federal Mediator and Conciliation Service.  The Federal Mediator ultimately agreed with Gloucester.  Moreover, Gloucester alleges that at no time during any of these proceedings did Plaintiff allege that his failure to appear at the time and date of recall was the result of his exercise of his rights under the Family Medical Leave Act ("FMLA").

Plaintiff filed a complaint in the United States District Court for the District of New Jersey on June 30, 2005.  Plaintiff alleges that Gloucester terminated him in violation of the FMLA, and he seeks damages for the loss of past, present and future income, lost benefits, and reinstatement. Specifically, Plaintiff asserts that Defendants interfered with his ability to exercise his rights under the FMLA, and that Defendants retaliated against him when he attempted to use this FMLA leave.  Defendants filed the motion for summary judgment on September 5, 2006.  Plaintiff

opposes the motion.

**II.  Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under the applicable law. Id.  In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences in a light most favorable to the nonmoving party.  Id. at 250.

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence

4

to support the nonmoving party's case." Id. at 325.  The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact.  Fed. R. Civ. P. 56(e).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**III. Discussion**

    A.   Serious Health Condition

Congress enacted the FMLA "to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers are willing or able to provide." Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997); see also 29 C.F.R. § 825.101. In addition to permitting eligible employees to take leave to care for a child or other family member, "the FMLA applies when an employee's own serious health condition makes the employee unable to perform the functions of his or her job." Victorelli, 128 F.3d at 186; see also 29 U.S.C.

§ 2612(a)(1)(D). "Employees who take leave pursuant to the statute are entitled to return to the same or equivalent position and benefits as they [enjoyed] previously. An employer who denies an employee these entitlements is in violation of the FMLA." Victorelli, 128 F.3d at 186; see also 29 U.S.C. §§ 2614(a)(1), 2615(a); 29 C.F.R. § 825.100(c)). To deter an employer from interfering with an employee's rights under FMLA, Congress provided that "an employer may be found liable for civil damages that include: compensatory damages for any wages, salary, employment benefits or other compensation lost by reason of the violation; and liquidated damages." Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006) (citing 29 U.S.C. § 2617(a)(1)(A)).

    To assert an FMLA claim, the employee must first show that the employee "was entitled to benefits under the FMLA and that he was denied them." Callison, 430 F.3d at 119 (citing 29 U.S.C. §§ 2612(a), 2614(a)). As a threshold matter, Plaintiff must demonstrate he suffers from a "serious health condition" that renders him unable to "perform the functions of the employee's position." 29 U.S.C. § 2612(a)(1)(D). The statute defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves either[] inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider." 29

6

U.S.C. § 2612(11). The Code of Federal Regulations elaborates on this definition, in part, by stating:

> A serious health condition involving continuing treatment by a health care provider includes . . . the following:
>
> . . .
>
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
>> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>>
>> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>>
>> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114.(a)(2)(iii). Moreover, the Code of Federal Regulations further states

> Treatment for purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

29 C.F.R. § 825.114(b).

In short, "to demonstrate that he suffered a serious health condition under the FMLA, . . . [Plaintiff] must demonstrate either that []he suffered (1) incapacity requiring absence from work for more than three days and subsequent treatment or period of incapacity relating to the same condition, or (2) a period of

7

incapacity or treatment for such incapacity due to a chronic serious health condition." McCoy v. Port Liberte Condominium Ass'n #1, Inc., No. 2:02-1313, 2003 WL 23330682, at *4 (D.N.J. Sept. 12 2003) (emphasis added).

Here, Plaintiff offers two pieces of evidence to support his assertion that on the morning of October 12, 2004, he received treatment for a serious health condition. Specifically, Plaintiff offers the expert opinion of one of his treating physicians, Thomas R. Comerci, MD, in which Dr. Comerci states that Plaintiff received treatment for a "variety of medical conditions, including hypertension, hyperliipidemia, heart failure, and carpal tunnel syndrome" since 1997. (Pl.'s Aff. of Counsel Ex. A.) Moreover, Dr. Comerci opines that he considers all of these conditions to be "serious health conditions" because they require "continuing treatment by a physician over an extended period of time." (Id.) In addition, Plaintiff offers a copy of a physician's note excusing Plaintiff from work the morning of October 12, 2004 for blood tests. (Pl.'s Aff. of Counsel Ex. C.) Moreover, Defendants offer a copy of Plaintiff's medical records, dated October 11, 2004, showing that Plaintiff saw a physician for his wrist pain due to carpal tunnel syndrome and high blood pressure on October 11, 2004. (Supp. Droughton Decl. Ex. A.) Defendants also offer a copy of Plaintiff's pathology report from his blood tests, conducted on October 12,

8

2004. (Supp. Droughton Decl. Ex. C.)

Therefore, Plaintiff met his burden of creating a genuine issue of material fact as to whether he suffers from a serious health condition, which makes him an eligible employee under the FMLA. Specifically, the record demonstrates that he received "treatment" for a "chronic serious health condition." Accordingly, the Court denies Defendants' motion for summary judgment on this issue.

B. Notice

Next, Defendants argue that Plaintiff never provided Gloucester with notice of the reason for his absence on October 12, 2004, either before or after he was due to return to work. Therefore, Defendants argue that Plaintiff's claims of retaliation and interference are inadequate as a matter of law, because to retaliate against Plaintiff, or to interfere with Plaintiff's ability to exercise his FMLA rights, Defendants must have known that Plaintiff exercised or intended to exercise FMLA rights.

"To establish [a] retaliation claim, [a plaintiff] must prove that: (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave." Conoshenti v. Public Serv. Elec. & Gas

9

Co., 364 F.3d 135, 147 (3d Cir. 2004).[2]

To assert a claim for interference, a plaintiff must establish that: "(1) she is an eligible employee under the FMLA, (2) defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which she was entitled under the FMLA." Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 485 (D.N.J. 2002).

The FMLA does not require an employee to expressly assert the employee's rights under the FMLA, or even mention the FMLA. However, an employee must give notice to the employer within no more than two working days after learning of the need for leave. 29 C.F.R. § 825.303(a).

At issue here is whether Plaintiff knew that Gloucester recalled him, effective October 12, 2004 at 8:00 A.M. If Plaintiff believed he was still furloughed, then there was no need for him to notify Gloucester of his need to take leave. However, if Plaintiff was aware of his recall, he had an

---

[2] Once a plaintiff makes out a prima facie case, the McDonnell Douglas burden shifting framework is implicated. Weston, 251 F.3d at 432. However, neither party argues beyond the notice issue. Therefore, the Court's analysis on this motion will end with whether there is a genuine issue of material fact regarding whether plaintiff notified Gloucester of his need to take leave for medical reasons as required by the FMLA and attendant regulations.

obligation under FMLA to notify Gloucester.  Moreover, Plaintiff and Gloucester dispute when Plaintiff notified Gloucester of his medical appointment, if ever.

Therefore, there exists a genuine issue of material fact as to whether Plaintiff needed to provide notice to Defendants, and if so, when, and if, he provided such notice.

As a result, the Court denies Defendants' motion for summary judgment as to this issue.

**IV. Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for summary judgment.


Dated: 4/26/2007                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge